Well, good morning and welcome to the United States Court of Appeals for the Third Circuit. Our first case for the day is Watkins v. Experian, No. 25-1250. And we'll hear from the appellant. Good morning, Your Honor. May it please the Court. Good morning. My name is Levy Eilman. I'm here from the consumer justice law firm on behalf of plaintiff appellant Mr. Ecole Watkins. I'd like to reserve four minutes of time for rebuttal. How much? Four minutes. That'll be granted. Thank you, Your Honor. Mr. Watkins had a child support account that's been paid and closed in May of 2017. For years, that's not posed an issue. But suddenly, about four years later, delinquency notations began appearing in that account. Despite submitting 18 disputes to Experian, Experian refused to remove or modify the information. Experian merely parroted whatever the child support agency provided to it and considered the matter as settled. Mr. Watkins is not satisfied with that, and that's why he brought suit. With respect to the 18 disputes, for 11 of those, Experian did some investigation. In other words, it sent an ACDV. That's an automatic credit dispute verification, essentially a computer page to the child support agency. The child support agency replied, responded with verifying information, occasionally updating various dates. But the court disputed items were not remedied. Experian received that ACDV response and reported that. For another seven disputes, Experian did not investigate at all. Experian instead decided that those disputes were— I think we know the facts here. Maybe we can just dig right in. It seems to me that you have—there are three things here, reasonable procedures, reasonable reinvestigation, and then there's the willfulness, too, which I guess we can get to if we have extra time. Maybe we can focus a little bit on reasonable procedures. That's one of your claims. Right. So there are a couple of aspects here that we contend are unreasonable. At least a jury may find it unreasonable. For example, not investigating disputes at all, there is no kind of exception for that in the FCRA. Sure, a consumer must send a dispute to Experian, not through other entities indirectly, but there's no evidence here that a plaintiff did not send the disputes in the sense that he was not heavily involved in sending those. In fact, if you look at the discarded disputes that's at the record, it's over 90 pages between JA 225 and 318. Over 90 pages of disputes where his Social Security card appears, I believe, seven times or his driver's license copy 13 times. He has notations, personal scribbles. He's marked, like, look here, look there. He is highlighted, although the highlighting is not very evident from the record due to the copying, but he's written in his social and his name. He was heavily involved with the disputes. These are not consumer disputes. It's hard to say that anybody downloading any template and customizing it would ever be considered a consumer dispute for FCRA purposes. So that's a real stretch to say that. I mean, customizing it and maybe signing it, right? But what about all the indicia that he did not personally prepare these or send them from his home zip code? So I would respectfully disagree that there are such indicia. There is some testimony that his sister may have placed it in the mailbox or a relative of his, a friend of his may have helped him with mailing it. They're signed by someone who purports to be an attorney, in fact, who is not named. And he admits that he used some unknown woman to assist. So he did use some unknown woman to assist. There's no other signatures in the disputes, like nobody else claimed it. So when he writes attorney, in fact, let me give some backstory for that. So experience suspicious mail letter when they send it, when they say, oh, it's suspicious mail. We're not going to investigate, you know, and they write there. It's also actually in their CFPB complaint responses where they write, oh, we'll accept a letter from an attorney like that's sufficient for our purposes. So Mr. Watkins is a truck driver sitting there like, oh, you need like something to say that I'm an attorney. How do I represent myself? So then from that from then on in the disputes, he writes attorney, in fact, for Mr. We're talking about ordinary consumers who are trying to get experience to fix it unsuccessfully. So they're doing everything they're being told in their minds reasonably. Let me ask you about the 11 disputes that were investigated. What what was experience supposed to do when I assume that you don't contest that there it was fine, at least as a starting point to use the automated system to to reach out to the to the child support agency. Right. And and and get a response as a starting point. Can we agree with that? Yeah, I see these can be reasonable depending on the dispute, you know, depending on how many supporting documents are provided with it or how in conflict the information is, how, you know, how illogical it may be. District Court founder, you know, illogicalities in the reporting. Like, there's no way this reporting could be accurate. So, and therefore, an ACD by itself will not suffice for those disputes. Everybody agrees that the investigation must be proportionate to the dispute. So simple to say, oh, I don't know, 5 to 10,000. I owe 5,000 already paid. Right. Okay, so they confirm they send an ACV to the furnisher, confirm that information that probably should be sufficient. But what if he attaches, you know, a payment, a proof of payment, right. And with a date on it and the furniture says, no, you didn't pay. Okay, that's a little bit questionable. Maybe they should do something more. Maybe they should call them and ask them what about the attachment. So, so it really depends on the dispute here. One of the suspicious disputes not investigated with, you know, that was an envelope with 16 pages. It had a Florida postmarket, a Florida zip code, which, by the way, is Disney World. So, you know, imagine somebody at Disney World, but he's sending the dispute for correcting his credit that he's trying to do for two years. That's over 16 pages and experienced disregard it because it has a super thin mail policy that says that it doesn't even have to open the mail and can just discard it without any investigation based only on the on the envelope. And note, the envelope has a return address of Mr. Watkins. So he wrote his return address in one corner, but because it was postmarked from somewhere else in the other corner by the post office that it by that just that caused experience to decide we don't need to open the envelope in the envelope. Where in the appendix are you looking at that 12 page document? So that's a 265 to 284. That's a 16 page dispute includes 11 pages of the payment history on the account. The complete payment history from the inception 2003 includes a letter from New York City Social Services. The department that that deals directly with the child support that confirms the accounts been closed has been paid last payments in 2017. So there was no it was closed since 2017. They never opened it. There was obviously, you know, photocopies of his driver's license and and other his digital signature and very detailed notice and the dispute and his letter experience didn't open the envelope because the postmark zip code was was not identical with what they had on file for the address for Mr. Watkins. You know, it seems like you can see in your briefing, like on page 14 of your brief that that that experience was required to report the information that was provided it from the agency. Isn't there some logical force to their argument that we would be held liable if we didn't report this. Do you agree. If we, if we, you know, if we agree with the Sixth Circuit's Barry decision, then that would carry weight. You know, we don't have, we don't have to this court doesn't need to do that. But if it does, there is some way to that. Don't we put them in a tough spot. I mean, they're they've got information. They've got to do something with it. So, so I'd imagine, I mean I'm not going to experience how to report it to make it more accurate but there's always make more accurate for example, they can say you know account obsolete account unverifiable mandatory reporting pursuant to 681 s one, you know, then third parties can look at it like this. You try to apply for the truck and the salesman looked at him like there's no way you get approved for that with this delinquency in the child support, you could have felt look even experience as they can verify this this is like they just have to include it. So, that does make a difference. If we're looking for. So I actually have a question on this point because there is sort of an assumption really on both sides and the briefs and other opinions that the child support information or facts or questions had to be posted but I'm curious if you, how you would define the statutory term information because regardless of notwithstanding and what that means 16 81 s dash one requires information on the failure of the consumer to pay overdue support. So what does any information include right and then that's I think been kind of the issue that the very first struggle with, you know, a frontline to without forfeiting or waving any arguments are frontline position is that information about the failure to pay means, if it's information about the failure to pay if it's not like in this case it's not information about the failure because that's not true. And the child support knows it and their letters show it. Obviously, so in that case it's not even information about the failures or child to pay child support because it's just not true. Okay, so I appreciate you taking on the phrase in total, there's but I see it as potentially there being two separate parts so any information. And I'm curious about what you just think the word information in general means for and then we you know we could think about the failure and what does the failure mean. But what's information just in general broadly. I think that, you know, it's going to be the information about the account might not be the address with the account but it's the delinquency information. How would you define just the word information. The g notation that indicates that the person is late for a particular month. So those g notations must be, does it have to be a true fact, does it have to be speculation. Is there any limitation on a data point being information. Right, I would say that it should be applied consistently with the broader principles of the FCRA like under 16 one EB that everything must be accurate. So if they receive a dispute that's supported with documentation with a letter from the same agency saying that the accounts been closed and paid. At that point, I don't think that the delinquency would be considered information. Okay, so I was curious just in general about like the dictionary definition or plain meaning of information but on the separate point of what the information is here. Is it your position that the information that was actually supposed to be reported was the fact that there was a flag for the child support. Or this idea that there was delinquency because it seems what happened to me is that experience and experience posted that there was delinquency. So is the information the delinquency or is the information, the fact that there was a flag. Do you know what I'm saying. There's like a distinction one is because obviously here they don't match up normally you would hope that if there's a flag on delinquency for child support that it indeed was a delinquency, but here it was posted as information when in fact it wasn't actually true. So is the information. The fact of the flag, or the delinquency itself. May I respond. Oh yes, by all means. Sure. The. So, I'm not sure I understand the flag point. There's an account status that says paid and paid wasn't collections and paid, which means satisfied. And then there are the particular monthly notations that say you know collection or no data or paid or whatever it is. So that's all the information there is in the account. So, I guess just to fly if I could just to flag for you for rebuttal and I'm going to ask Council on the other side this too I guess I'm just curious about whether we need to unpack more the assumption that the information the delinquency or the alleged delinquency had to be posted in the first place and whether it actually falls within the statutory mandate here. So, I'd be curious on rebuttal if you have any more thoughts about exactly what the category of information includes. Thank you. Thank you. We're from a Pele. Please the court and Daniel Garrett for Experian judge mascot. Let me start with your question. So, what was challenged. In this case in the complaint and through summary judgment was for collection notation. So, you have the child support agency sends us sort of global information about the account. What is the status, but then they have month to month notifications about the status of the account. What was challenged here are four notifications for four specific months where they reported that the account was in collections. So, in our view, that is information about the failure to pay over your child support. The any information I think probably includes the information necessary for a creditor to understand the context of the account. So, it likely does include, you know, the status of the account the sort of global information, but here what's challenged is the collection accounts, which we think falls within the statute. Okay, but when I look up just plain old dictionary definitions of information sort of separate and apart from this particular statutory context, it uses terms like facts and data. And it doesn't seem like facts and data were actually what was reported here because it was false. So, I guess my question is like this information necessarily mean only true data because otherwise essentially what we're sort of finding is that Congress actually is requiring and mandating that consumer reporting agencies report falsehood. Is that true? I don't think so, Your Honor. I mean, I think what the purpose of the statute was to say, look, if a child support agency tells you, Experian, that somebody has a failure to pay, you have to report that. And I think it would grossly undermine that purpose if what that meant is only if the child support agency is right. Then it becomes like every other account where we have to determine whether it's factually accurate or not. Well, and that was, again, why I was asking your friend on the other side what the actual information is, because if the information is that there was, and I'm using the word flag, but that there was some concern about the data, then that would fall within the category. If the information is the fact of the delinquency itself, then I guess I just have concerns that we're saying Congress is requiring. I think our position is absolutely Congress wanted credit reporting agencies to report if somebody was late on a payment or if that payment had been sent to collections because they want to put pressure on individuals required to pay child support. And if they fail to do so, they want that reported. Now, there's a separate question about what do you do when the agency may be wrong. But I think at the front end, they certainly want to capture collections accounts. Can I just ask you, maybe we can have some common ground here. Do you agree that Watkins credit report was inaccurate? I think for purposes of this argument, I'm happy to. Okay. I wonder about, would you also agree that they were inconsistent? I'm looking particularly at pages in your appendix actually on the statement of undisputed facts. I'm looking at, for instance, 2021. This is page 48 and 49. It seems resolved and now it's not. It seems a little inconsistent to me. There's charts here. I think that's a fair instinct, Your Honor. The problem is these are confusing accounts. You could have multiple children on the account. We are sending his dispute and all the information we have on the dispute to the State Department of Enforcement, which, by the way, is different from the agency he got a letter from. The letter was from the city local office. The state agency, which is the one that's responsible for enforcing these, we're sending this information to them. We're sending the materials he sends us. And every time they're saying, no, this is correct. Now, I think standing here in the Third Circuit and thinking about it like a lawyer, I think I understand the instinct to say these seem inconsistent. But we have somebody who's not a trained lawyer receiving these materials and saying to the state, this person is saying this is incorrect. And they're saying, no, it's actually correct. And every month, as my opposing counsel conceded, not just saying it's correct, but then updating it with new information and saying this account is changing. I think it's hard for a person to look at page forty eight of the joint appendix. This is the matrix and it says and my child support enforcement, et cetera. And to the right of that, at the top, it's a status. March twenty twenty three paid comma closed. Correct. OK. And then and then you look down at the first row of the matrix and it says a C and the C means collections. Right. Correct. So how is that just just looking at this image? How is is that consistent? Because what they were reporting to us was the account was closed, but it had been in collections for certain months. In the last reported month, it was in collections and then it was closed. And there's no notation about the the collections having been satisfied. Well, this is in I believe this is in September. Your honor. So they're saying in previous months it was in. Well, it says status, March twenty twenty three. And then it shows a C. I see. Yeah. Right. So they were telling us, look, this is this has been closed. It's satisfied, but it was in collections in the past. OK, I mean, I guess what I'm trying to get at here is, is isn't there something questionable about just this snapshot in time? I think there is something questionable and I'm conceding that, your honor. But I'm also saying that's why we were sending these questions to the state and saying, explain this to us. And they said, no, you're you're correct. And so the question is, what do we do? Right. I think so. You sent the questions to the state when Mr. Watkins asked you to. Right. But but there's a preliminary step, which is the assuring reasonable accuracy or maximum possible accuracy before the reinvestigation. Right. Right. So. So with this, with this image that we just looked at together, trigger some action by. I don't think so, your honor. I think courts have pretty regularly held that until then, unless there's a dispute that creditors are allowed to trust generally reliable sources of information. And I think the state is a reliable source of information. Now, I think we had to I think we had to report this. The question is, do we then supplement it with something else? And so what do we supplement it with? That's what I haven't still quite gotten the answer to. I mean, Barry, I think quite correctly says, no, you if there's information about the rear, you have to report. They allowed for the possibility that in that case, for example, we also had to report a court order because in that case, maybe he was late, but the court order had abated it. What I understand from Appellant's brief is what we should have reported is this was wrong. I think that's a problem under 6081-S. I think it's a problem if CRAs have to say this is what the agency has reported to us, but we don't trust it. I don't think 1681-S. How about just an asterisk? There's something funny going on here. We're looking into it. I mean, something so that the person or the company that receives this credit report, it doesn't take it. Absolutely. They were aware we'd looked into it. I mean, we do know when when an account has been disputed. And at that point in March 2023, there was a notation of that dispute. It would have said on his credit report, this is a dispute. There have been disputes about the account. You know, we're in the procedural posture summary judgment. We don't have a trial record here. So we're in a different posture altogether. I just did. Well, OK, I just thought I'd point that out. Yeah. You know, we're talking about a record that we can't all agree upon. Well, that's what your obligation would be. So maybe let me turn to willfulness, because I think that that is an issue that can be resolved on on summary. OK. And I think the two issues on willfulness is one, what were our obligations here in light of 1681-S1? I think Barry says, you know, at the very least at this time, it wasn't willful for us to follow what we thought the law required, which is we have to report this. Then the second issue, and this this actually may be the most important issue lurking in the case, honestly, for credit reporting is this issue about the the third party disputes. The reason it's so important and maybe it's helpful to take a step back. Probably about 25 to 30 percent of the disputes that CRAs receive are from for-profit credit reporting agencies or sorry, credit reporting organizations. And what happens is these are for-profit companies that sign people up and say, you pay us depending on the number of accounts we're able to get off your credit report. And this is just background, but I'm raising it just so the court understands how important this issue is. And what will happen is you'll see this from some of the disputes in the record. They send out these sort of mass anything that's negative. They challenge it on a bunch of grounds and it forces us to, you know, expend resources on accounts that are legitimate, including in this case. You'll see he repeatedly challenged this Bank of America account saying it was fraudulent when there's no mention of it here. What happens is these arrive in thousands and thousands of letters at the same time that all look the same. Now, counsel was saying we don't read them. But what we do is we sample some of them to show, look, we just got 10,000 letters from North Houston and we open some of them and say, look, they're all the same. They're all these these mass generated letters. And so in that case, what we do is we contact the individual and say, if you really want to dispute this with us directly, let us know. We'll look into it. But the concern I have, Your Honor, is there are so many of these and they're frankly often so illegitimate that requiring us to process these would dramatically change the way we're able to spend time on on disputes from consumers. That's all I'll say. I think it's an important issue. So I don't think we were willful in terms of if these mass generated letters are coming in, contacting the consumer and saying, if you want to dispute with us, let us know. That's what the regular that's what the regulators have told us to do. I'm sorry. Which regulators? The FTC has said we don't need to process these credit report reporting credit report organization letters. That's in our briefs. So I think on willfulness, there's not a willfulness claim here. And if you agree with us on that, then we have to look at actual damages. And this is the point we tried to make in the brief, which is this case was tried below from complaints through summary judgment as a patent inaccuracy case. And so there really was never developed this theory that Mr. Watkins was injured because we didn't supplement in some way by providing additional information. And so there's just no evidence that he was injured because we didn't supplement. So, for example, you know, he he talks about a loan, a broker telling him, don't apply for a loan for a truck for this. That's that's not enough. Well, not two reasons. No. One, he said, I would have told you that anyway, based on this Bank of America account. That's not an issue in this case. That's appendix three ninety four. But secondly, because he says, look, if you've got this collection account on there, I'm going to tell you not to apply. And our argument is that had to be on there, whether we had whether as in Barry, we had to supplement that with something. We don't think we did. But if we did, there's no evidence that providing some sort of statement would have led that broker to say, oh, now you're fine. Apply for the truck. That's that's the issue is this theory was never developed. It was all about I'm emotionally distraught and my Cortez would allow that when our case in Cortez in terms of the substantial factor causation. Yeah, well, I don't think you are, because in Philbin, this court said you need to be it needs to be a substantial factor. And the way to find that was to say, look at traditional tort law. You might have two issues that on their own wouldn't cause injury, but together they do. And so if you're one of these, if the inaccuracy is an issue that it's part of the mix and it and it causes you not to excuse me, cause you to be injured, that's enough. Not fighting that. But here already he had another account. That was a problem where the person said, I wouldn't have told him to go for the loan anyway. So I think that alone shows it wasn't a substantial factor. But more than that, it was just never developed that if we had supplemented, there would have been any impact. Anything else? No, thank you, your honor. All right. Thank you, counsel. We'll hear rebuttal. So I'll just take a moment to try to make the analogy between this case and Barry a little stronger and Barry also there was extraneous information in the sense that there was a state court order extraneous information that the child support agency did not have access to. And the court said, you know, you can supplement whatever child support is providing with that other information from the court here. You know, like my colleague mentioned, there is the city agency and the state agency. The state agency is reporting to experience. And maybe that's why his records are not so updated. The city is the most relevant agency, the one dealing with Mr. Watkins on a regular basis. And that's who he's going to for letters and for confirmation. That's additional information that the state maybe doesn't have. Maybe there's a computer miscommunication between them, whatever the case may be. But the city is the more direct entity in about the inconsistent information within the A.C.D.V. responses. There's the crucial point there because in their briefs, they don't really acknowledge it. The crucial point in those A.C.D.V. responses are really in the letters from the city. Child support is that the date of last payment is in May 2017. Without that date of last payment, it's maybe not inconsistent. But if we factor in the date of last payment, 2017, and also there are no outstanding balances or payments due and the accounts been satisfied, that must mean that there could not be a delinquency since 2017. So that's the crucial point there. I think maybe they gloss over in their brief. On the unreasonable… Judge Mascot asked you a question at the end. Perhaps you could address what her query was. Yeah, I think that my colleague may have addressed it, but I think the city-state difference on that. In other words, is it information if it's not true? I think the state doesn't have the correct information. So when they're providing child support information to Experian, maybe that's not what S-1 had in mind when they said information because that's not the most up-to-date information. I want to say almost secondhand, but I don't think there's a super clear record on that. We are where we are posture-wise. Just to be clear, your position is just as a legal and definitional matter that the term information in a statute would bake into it that it's an actual fact and like a true piece of data or something, observation, not a total falsehood. Right, right. And of course, my colleague would say, well, the whole point is that we shouldn't have to investigate whether it's true or not. And that's what S-1 is trying to do. But we think it can work consistently with EB and I and the requirements that everything be I. And actually on that, just because I didn't ask this question earlier, I mean, are we confident that is the purpose of S-1? I mean, S-1 obviously wants complete, ready information about child support, but there are other, I mean, this is notwithstanding any other provision in this subchapter. And there are other provisions that are just general exceptions and ways in which sometimes there can be an extenuating or outside circumstance, meaning otherwise reportable data point doesn't have to come in. So is the only purpose of this provision just that every single last comment anybody has ever made about child support, false or true, has to be posted or is it narrower? Yeah, I like Barry and without forfeiting, you know, that's a good approach as well. But I think the approach has to be S-1. The purpose is to make sure that reporting agencies include child support as a category. In other words, that's not a credit item, right? Child support is something else. And Congress said we have to hold that the debt's accountable. We have to include it in credit reports, this classification of child support payments. That doesn't mean that every particular notation must be reported. It just means the account must be reported, of course. But assuming everything else is accurate, it must be reported. So that's how we kind of make those congruent with each other. This furniture is an unreliable furniture. They have an error rate that's 65 times Wells Fargo. So Wells Fargo, respected financial institution, say what you want, you know, but 65 times worse, not 65 percent, seven times worse the industry average when it comes to auto loans. So they're pretty bad. And that makes sense. They kind of have immunity. Nobody can really sue them as a furniture, being that they're a government arm. So that's all I got. Can I just ask you another question? Your adversary talked about the third party mail processing system. And it seems that they get tens of thousands of letters from commercial outfits. Is it really unreasonable that what they're doing, as he said, would change the nature of their business? If we credit what you're saying, I think those are good arguments that they can make to a jury, because I think about it. Even though they didn't follow their own policy here, their own policy said they don't have to open the mail and only sample them for super thin mail, which they classify as one to two pages thick. This is 16 pages. They didn't even open it. So something's going on there. A jury can look at it and say that that's not good. OK, thank you, counsel. We'll take the case under advisement. We thank counsel for their excellent briefing and argument today.